UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHARLES POWELL, ET AL.                       CIVIL ACTION

VERSUS                                       NO: 08-3842
                                             c/w 09-3869

GLOBAL MARINE, LLC A/K/A                     SECTION: R
GLOBAL MARINE, INC.

## ORDER AND REASONS

Before the Court is defendant Global Marine LLC's Motion to Dismiss. R. Doc. 21.[1] For the following reasons, the motion is GRANTED.

## I. Background

These consolidated cases arise out of a voyage of the M/V DOUGLAS MACARTHUR ("MACARTHUR"), which sailed from Amelia, Louisiana, to the U.S. Virgin Islands and the Dominican Republic in May of 2005. Plaintiffs Charles Powell and Christopher Wyman joined the crew of the MACARTHUR as deckhands in April of 2005. Both were to receive payment of $175 per day from defendant, their maritime employer, to be paid on the first and fifteenth of each month. Plaintiffs allege that they were paid through the

---

[1] Unless otherwise specified, all references to record documents refer to documents in the record of Charles Powell's original case, No. 08-3842. Christopher Wyman's original complaint, No. 09-3869, was consolidated merged into Powell's shortly after the filing of his Complaint.

1

end of May, but did not receive their wages in June.

While on "shore leave" on June 28, 2005, Wyman suffered an injury to his ankle that rendered him unable to perform his duties as a deckhand. Exactly which shore this injury took place upon is not clear from the Complaints. Both Wyman and Powell reported the injury to the Master of the MACARTHUR and to Stanley Hendrickson, one of defendant's officers. Wyman alleges that he requested but did not receive medical treatment from defendant. After the injury, Powell volunteered to assist Wyman in seeking lodging and medical treatment, consistent with Hendrickson's expressed wishes. Plaintiffs allege that neither defendant nor the Master of the MACARTHUR arranged for food or lodging while the two sought medical treatment for Wyman. They further allege that they requested that defendant repatriate them to the United States, but defendant refused to do so. On July 9, 2005, the U.S. Coast Guard flew them back to the United States from the Dominican Republic. According to the Complaints, they never received the wages that were due to them from this time period.

Plaintiffs brought separate actions against defendant, which were consolidated in this Court. Both plaintiffs seek their unpaid wages in addition to double their daily wages for each day the payment was delayed under the Seaman's Wage Act. Powell contends that defendant owes him for twenty-eight days of unpaid wages from June of 2005, which leads to a total of $4,900. He

argues in the alternative that, because Hendrickson expressed a desire that Powell should assist Wyman in locating medical care, Powell was performing work at the instructions of defendant up to July 9, 2005, and he is owed eleven additional days of wages: an additional $1,925.  He provides two figures for how much he is owed for the delayed payment.  He notes that if the period of delay is determined to have begun on June 28, he is owed $383,250 for the delay.  If it is determined to have begun on July 16, he claims that defendant owes him $376,950.

Wyman similarly claims that he is owed $4,900 for unpaid wages from June of 2005, and that the double-wage penalty adds up to $383,250.  He further seeks damages for maintenance and cure, as well as attorneys' fees and various compensatory damages for defendant's alleged failure to treat his injury.

Defendant has now moved to dismiss.  It argues that the provisions of the Seaman's Wage Act do not apply to plaintiffs because the Act excepts vessels traveling to a port in the "West Indies" or those engaged in "coastwise commerce," and the voyage of the MACARTHUR falls into both categories.  It additionally argues that Wyman's personal-injury claims were not filed within the applicable statute of limitations, and that his claims for unpaid wages and maintenance and cure are barred by the doctrine of laches.  Defendant does not challenge Powell's claims for unpaid wages.

## II. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1960 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1940. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 1949.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiff's claim is true. *Id.* It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly,* 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 256. If there are insufficient factual allegations to raise a right to relief above the speculative

4

level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n.9 (5th Cir. 2007), the claim must be dismissed.

**III. Discussion**

*A. The Applicability of the Double-Wage Provision of the Seaman's Wage Act*

The parties disagree as to whether the double-wage provision of the Seaman's Wage Act applies to this case. Under certain provisions of this Act, a seaman whose wages are withheld "without sufficient cause" is entitled to twice his daily wages for each calendar day that payment is delayed. *See* 46 U.S.C. § 10313(g); *see also id.* § 10504(c). If the court finds that a seaman's wages were unreasonably withheld, it must apply the double-wage penalty. *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 570-71 (1982) (holding that a court has no discretion in the assessment of the double-wage penalty); *see also Fanos v. Maersk Line, Ltd.*, 363 F.3d 358, 361-62 (5th Cir. 2004).

Two provisions of the Act determine when a seaman may take advantage of the double-wage provision. One applies to seamen on either a voyage between the Atlantic and Pacific coasts of the United States or "on a voyage between a port in the United States and a port in a foreign country (except a port in Canada, Mexico,

or the West Indies)." 46 U.S.C. § 10301(a). Foreign voyages to the "West Indies" are explicitly excluded from the coverage of the statute.

The other provision of the Act applies to seamen on domestic voyages, specifically voyages "between a port in one State and a port in another State (except an adjoining State)."[2] *Id.* § 10501(a). Seamen on voyages that fall into this category can avail themselves of certain entitlements under the statute, such as a signed shipping agreement, *id.* § 10502, and the ability for the seaman to demand portions of his wages at specified intervals during the voyage. *Id.* § 10504(a). The double-wage provision, however, does not apply to seamen on vessels that are "engaged in coastwise commerce." *Id.* § 10504(d)(1); *see also Kaluom v. Stolt Offshore, Inc.*, 504 F.3d 511, 517 (5th Cir. 2007) (holding that § 10301 and § 10501 limit the application of the double-wage provisions).

Here, the parties agree that the MACARTHUR stopped in the U.S. Virgin Islands to unload cargo before continuing to the Dominican Republic. Defendant contends that both the U.S. Virgin Islands and the Dominican Republic are part of the West Indies, and they are thus excluded from the section of the Seaman's Wage Act that allows double-wage penalties arising from foreign

---

[2] Certain other requirements of the statutes, specifically related to tonnage, are not disputed and are therefore omitted from this discussion.

voyages. It further contends that, if the injury took place in the Virgin Islands, the voyage of the MACARTHUR is outside the coverage of the double-wage provision of the Act because it was engaged in "coastwise commerce." It would thus not qualify for a double-wage penalty under the provisions of the Seaman's Wage Act that pertain to domestic voyages.

Plaintiffs argue that the Virgin Islands are not, in fact, part of the West Indies, and that the provision applicable to voyages between U.S. ports does not apply because the Virgin Islands are not a state.

Again, the Complaints themselves do not specify where some of the relevant conduct took place. They indicate that the MACARTHUR set sail from Louisiana to the U.S. Virgin Islands, and that Wyman suffered his injury while on "shore leave." This injury rendered him "*unable to climb aboard the vessel* . . . ." R. Doc. 1 at 5 (emphasis added); *see also* No. 09-3869, R. Doc. 1 at 3. The plaintiffs, however, were allegedly flown back to the United States from the Dominican Republic, not the U.S. Virgin Islands. Wyman's inability to board the MACARTHUR after his injury and plaintiffs' flight out of the Dominican Republic together give rise to the implication that the injury took place in the Dominican Republic. This is especially true because there is no suggestion in the Complaints how else the plaintiffs might have traveled to the Dominican Republic if Wyman was unable to

7

board the MACARTHUR.

Again, the double-wage provision does not apply to a "voyage between a port in the United States and a port in a foreign country (except a port in Canada, Mexico, or the West Indies)." 46 U.S.C. § 10301(a)(1). The term "West Indies" is not defined in the statute. Plaintiffs, in their opposition to the Motion to Dismiss, concede that the Dominican Republic is part of the "West Indies," R. Doc. At 3; *see also The Marianne*, 24 F. Supp. 786, 787 (E.D. La. 1938) (noting that a port in the Dominican Republic is a port in the West Indies); *Priyanto v. M/S Amsterdam*, No. 07-3811, 2009 WL 650734, at *2 n.5 (C.D. Cal. Mar. 11, 2009) (noting that "foreign" voyages under the statute exclude ports in the "Caribbean"), but contend that the U.S. Virgin Islands are not. They argue that this stop in the Virgin Islands exempts the entire voyage from the scope of the double-wage provision.

Plaintiffs cite no authority for this proposition. The term "voyage," as used in the Act, is not defined in the relevant laws. Although the Fifth Circuit has not addressed the question of what constitutes a "voyage" under the Seaman's Wage Act, the Ninth Circuit has held that "[a] seaman's voyage ends when his commitment to work aboard the ship is terminated, either by completion of his contract or by premature discharge." *Su v. M/V Southern Aster*, 978 F.2d 462, 470 (9th Cir. 1992). Wyman contends only that he should have been paid through the date of

8

his injury, and Powell argues that he is owed payment through the date the two left the Dominican Republic.

Thus, if the plaintiffs' commitment to work aboard the MACARTHUR terminated in the Dominican Republic, their voyage did as well, and the voyage thus fits into the language of the statute that holds the double-wage provision inapplicable to any "voyage between a port in the United States and a port in . . . the West Indies." 46 U.S.C. § 10301(a)(1).

Even if Wyman's injury took place in the Virgin Islands and not the Dominican Republic, however, plaintiffs still cannot seek the benefit of the double-wage provision. The question of whether the Virgin Islands are part of the West Indies need not be answered here. Section 10301(a)(1) of Title 46 applies to "voyage[s] between a port in the United States and a port in a *foreign country* (except a port in Canada, Mexico, or the West Indies)" (emphasis added). The U.S. Virgin Islands are not a foreign country; they are a territory of the United States. 48 U.S.C. § 1541(a) ("The Virgin Islands as above described are declared an unincorporated territory of the United States of America.").

Another section of the Seaman's Wage Act, however, allows seamen traveling between U.S. ports to take advantage of the double-wage provision. That section applies to "voyage[s] between a port in one State and a port in another State (except

9

an adjoining State)." 46 U.S.C. § 10501(a); *see also id.* § 10504(c); *Kaluom*, 504 F.3d at 517. The Virgin Islands are, contrary to plaintiffs' assertion, a "State" for the purposes of the maritime laws, and a voyage that ends there is thus subject to this provision. *See* 46 U.S.C. § 112 ("In [Title 46 of the U.S. Code], the term 'State' means a State of the United States, the District of Columbia, Guam, Puerto Rico, *the Virgin Islands*, American Samoa, the Northern Marinara Islands, and any other territory or possession of the United States.") (emphasis added); *see also id.* § 114 (including "the Virgin Islands" in the definition of the term "United States").

But that provision does not allow a seaman to collect double wages if he was employed on a "vessel engaged in coastwise commerce." 46 U.S.C. § 10504(d)(1); *see also Itima v. Coscol Marine Corp.*, 39 F.3d 319 (5th Cir. 1994). "Coastwise commerce" is not defined by the statute. *See* 1 THOMAS J. SCHOENBAUM AND JESSICA L. MCCLELLAN, ADMIRALTY AND MARITIME LAW § 6-4 (2003 & Supp. 2010).

There is little question that the MACARTHUR was engaging in commerce. Powell's Complaint indicates that the vessel "left Louisiana with construction materials and other cargo destined for the U.S. Virgin Islands." R. Doc. 1 at 3. Furthermore, plaintiffs concede in their opposition to defendant's Motion to Dismiss that the MACARTHUR was transporting goods to the Virgin Islands. The opposition twice states that the vessel "discharged

its cargo" in the Virgin Islands before sailing to the Dominican Republic. R. Doc. 23 at 1-2. In *Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1289 (11th Cir. 2000), the Eleventh Circuit, interpreting the term "coastwise commerce," held that "at minimum, commerce includes the transportation of goods between states." *See also* BLACK'S LAW DICTIONARY 304 (9th ed. 2009) (defining "commerce" as "[t]he exchange of goods and services, esp. on a large scale involving transportation between cities, states, and nations"). This is precisely what the MACARTHUR was doing.

The question, then, is whether a voyage from Louisiana to the United States Virgin Islands should be considered "coastwise." The Court finds that it should. First, the structure of the statute supports such a determination. Chapter 105 of Title 46 of the United States Code is entitled "Coastwise Voyages." The chapter applies to "voyage[s] between a port in one State and a port in another State (except an adjoining State)." 46 U.S.C. § 10501. Several courts have determined that these types of voyages are what the statute envisions when employing the term "coastwise." *See Kirby*, 205 F.3d at 1289; *see also Pac. Merch. Shipping Ass'n v. Aubry*, 918 F.2d 1409, 1412 (9th Cir. 1990); *In re Peterson*, __ F. Supp. 2d __, No. 09-065, 2009 WL 3380684, at *1 (D.S.C. July 1, 2009); *Kaluom v. Stolt Offshore, Inc.*, No. 04-609, 2006 WL 287975, at *3 (S.D. Tex. Feb.

6, 2006), *aff'd*, 504 F.3d 511 (5th Cir. 2007); *Colendra v. Horizon Offshore Contractors, Inc.*, No. 04-625, 2005 WL 3359343, at *3 (S.D. Tex. Dec. 9, 2005). Again, the word "State," as used in Title 46, includes the Virgin Islands. 46 U.S.C. § 112.

Second, the Supreme Court has suggested that trade involving offshore territorial possessions can be considered "coastwise" for the purposes of the maritime laws. In *Inter-Island Steam Navigation Co. v. Byrne*, 239 U.S. 459 (1915), the Court had before it a seaman on a vessel "plying only in the interisland coast trade" of the Hawaii Territory.[3] *Id.* at 459. The seaman argued that his wages were exempt from garnishment by the then-current version of the maritime laws. The Court found that the law in question did not apply to seamen on vessels in the coastwise trade, and ruled that, because the seaman was engaged in coastwise trade, the law did not apply to him. *Id.* at 462-63; *see also Schnack v. Clark*, 21 Haw. 661, 1913 WL 1669, at *1 (Haw. Terr. 1913) (noting that "[i]t is conceded" that a seaman who was involved in trade between the islands of the Hawaii Territory was engaged in coastwise trade).

Finally, excluding voyages between Louisiana and the Virgin Islands from the double-wage provisions is consistent with the history and purpose of the statute. The historical antecedent to

---

[3] Hawaii did not become a State until 1959. *See* Hawaii Admission Act, Pub. L. No. 86-3, 73 Stat. 4 (1959).

the current statute took the form of an act passed in 1872, which included numerous protections for seamen.  These protections included a provision allowing for double wages for seamen who were not paid their wages at a specified time after the termination of the voyage.  Shipping Commissioners Act of 1872, ch. 322, § 35, 17 Stat. 262, 269 (1872).  Two years later, this act was amended so as not to apply to "vessels engaged in the coastwise trade, except the coastwise trade between the Atlantic and Pacific coasts, or in the lake-going trade touching at foreign ports or otherwise, or in the trade between the United States and the British North American possessions."  Act of June 9, 1874, ch. 260, 18 Stat. 64-65 (1874); *see also Kaluom*, 504 F.3d at 520 & n.13.  Accordingly, seamen traveling between the Atlantic and Pacific coasts could avail themselves of the double-wage provision, as could seamen on foreign voyages, as long as those voyages traveled farther than North America.

Thus, the double-wage provision applied when seamen were traveling on extended, often intercontinental voyages.  Such a statutory scheme reflected the purpose of the coastwise exemptions from the acts protecting seamen.  The Supreme Court described that purpose as "the relief of vessels making relatively short voyages, with frequent opportunities for reaching ports, from burdensome requirements not then deemed essential to the welfare of seamen employed thereon."  *Inter-*

13

*Island Steam Navigation*, 239 U.S. at 462-63. This purpose is still reflected in the contemporary incarnation of the statute, which applies the double-wage provision to voyages between the Atlantic and Pacific coasts, or voyages to foreign ports outside Canada, Mexico, and the West Indies. 46 U.S.C. § 10301(a). Furthermore, the "coastwise commerce" exemption to domestic voyages makes the application of the double-wage provision rare. *See Kirby*, 205 F.3d at 1289 n.9; *Kaluom*, 504 F.3d at 521 n.14. Here, plaintiffs were seamen on the type of relatively brief voyage between the United States and the Caribbean that contained numerous opportunities for reaching ports and was thus historically exempted from the scope of the double-wage provision.

In sum, plaintiffs cannot seek the benefit of the Seaman's Wage Act's double-wage provision regardless of where Wyman's injury took place. Those claims are therefore dismissed.

*B. Wyman's Claims for Personal Injuries, Unpaid Wages, and Maintenance and Cure*

Defendant next contends that Wyman's claims are time-barred. A seaman may bring an action for injuries that are aggravated as a result of failure to pay maintenance and cure. This action is tortious in nature and subject to a limitations period of three years. *See* 46 U.S.C. § 30106; *see also Vaughan v. Atkinson*, 369 U.S. 527, 530-31 (1962); *Cortes v. Baltimore Insular Lines*, 287

U.S. 367, 371 (1932); *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 177 (5th Cir. 2005); *Morales v. Garijak*, 829 F.3d 1355, 1358 (5th Cir. 1987) (abrogated on other ground by *Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496 (5th Cir. 1995)); *Picou v. Am. Offshore Fleet*, 576 F.2d 585, 587 (5th Cir. 1978); 1 THOMAS J. SCHOENBAUM AND JESSICA L. MCCLELLAN, ADMIRALTY AND MARITIME LAW § 6-34 (2003 & Supp. 2010); 2 ROBERT FORCE AND MARTIN J. NORRIS, THE LAW OF SEAMEN § 26:58 (5th ed. 2009). Claims for maintenance and cure are governed by the equitable doctrine of laches, although the Fifth Circuit has looked to the three-year period from 46 U.S.C. § 30106 in its laches analysis. *See Jones v. Tidewater Marine, LLC*, 262 Fed. App'x 646, 648 (5th Cir. 2008); *Cooper v. Diamond M Co.*, 799 F.2d 176, 179 (5th Cir. 1986). Actions for unpaid wages are similarly subject to the doctrine of laches. *See Chretien v. Exxon Co., U.S.A.*, 863 F.2d 182, 183 (1st Cir. 1988), *aff'g* 701 F. Supp. 266, 271 (D.N.H. 1988); *see also Breslin v. Maritime Overseas Corp.*, 662 F. Supp. 195, 198-99 (S.D.N.Y. 1987).

1. Statute of Limitations and Wyman's Personal Injury Claim

In calculating a limitations period, courts in this Circuit typically apply a "time-of-event rule," which begins the running of the clock once the plaintiff sustains an injury. *Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 268 (5th Cir. 1991); *see also Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 228-29 (5th Cir.

15

1984). If the injury is a latent one that a plaintiff either does not or cannot discover until after the injury, a court will apply a "discovery" rule, which begins the limitations period "on the date the plaintiff discovers, or reasonably should have discovered, both the injury and its cause." *Albertson*, 939 F.2d at 229; *see also Wilson*, 939 F.2d at 268. This rule, however, is applicable only to scenarios in which the plaintiff is not aware that an injury occurred. If a plaintiff suffers an immediate and obvious injury that has latent effects, a court will calculate the limitations period from the time of the injury. *Albertson*, 749 F.2d at 231-32; *Wilson*, 939 F.2d at 268. Although Wyman seeks damages for aggravation of his injuries, the injury itself was immediate and traumatic and the Court therefore applies a time-of-event rule to the limitations period.

This injury occurred on June 28, 2005. Wyman filed suit on June 15, 2009, nearly four years after his injury. At first blush, his claim appears to be barred by the limitations period. He argues, however, that he originally filed this suit on June 27, 2008. *See* No. 08-3841, R. Doc. 1. That case was dismissed without prejudice for failure to prosecute on June 12, 2009. The court gave Wyman an opportunity to report the status of the case or to show cause why the case should remain on the docket, but he did neither. *See* No. 08-3841, R. Docs. 3, 4, 5. He refiled his suit three days later. He now claims that the limitations period

16

was tolled while his previous case was active, and that once that is taken into account, the present suit is timely.

This argument is unavailing. Wyman's previous suit was dismissed because he failed to participate in it. This type of dismissal does not toll the limitations period.[4] *See Price v. Digital Equip. Corp.*, 846 F.2d 1026, 1027 (5th Cir. 1988); *see also Hilbun v. Goldberg*, 823 F.2d 881, 883 (5th Cir. 1987). Wyman's claims for personal injuries are therefore untimely and consequently must be dismissed.

2. Laches and Wyman's Claims for Unpaid Wages and Maintenance and Cure

The Court applies the doctrine of laches to the claims for maintenance and cure and unpaid wages. Laches is "an inexcusable delay that results in prejudice to the defendant." *Bd. of Supervisors for La. St. Univ. Agricultural & Mechanical Coll. v. Smack Apparel Co.*, 550 F.3d 465, 489-90 (5th Cir. 2008) (quoting *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 205 (5th Cir. 1998)); *see also Albertson*, 749 F.2d at 233. A finding of a defense of laches requires the Court to weigh the equities as they appear from the facts of each case. *See Esso Int'l, Inc. v.*

---

[4] Unless the court says otherwise, a dismissal for failure to prosecute is a decision on the merits, and a plaintiff may not refile the same claims. FED. R. CIV. P. 41(b). Here, however, the dismissing judge made clear that the dismissal was without prejudice. *See* No. 08-3841, R. Doc. 4.

*S.S. Captain John*, 443 F.2d 1144, 1150 (5th Cir. 1971). The decision is largely committed to the discretion of the district court. *See Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 707 (5th Cir. 1994).

Again, the Fifth Circuit has looked at the analogous maritime tort statute in its consideration of whether laches bar a claim for maintenance and cure. *Jones*, 262 Fed. App'x at 648; *Cooper*, 799 F.2d at 179. That statute provides for a three-year limitations period. 46 U.S.C. § 30106. As noted above, that period has passed. Once a limitations period that is analogous to the claims subject to laches has run, the plaintiff must show that there was an excuse for the delay or that the defendant did not suffer prejudice. *Pizani v. M/V Cotton Blossom*, 669 F.2d 1084, 1087 n.1 (5th Cir. 1982); *see also Mecom v. Livingston Shipbuilding Co.*, 622 F.2d 1209, 1216 (5th Cir. 1980); *McMahon v. Pan Am. World Airways*, 297 F.2d 268, 270 (5th Cir. 1962).

For his claim of maintenance and cure, Wyman has not done so. Had he pursued his original claim, the Court might find that laches did not raise a bar to his suit. But he did not. Wyman suffered his injury almost four years before he brought the present suit. His previous suit was dismissed because he failed to prosecute it, and in fact he did not make an attempt to show cause for this failure when the court gave him an opportunity to do so. He has not provided the Court with any reasons or excuses

why he failed to prosecute his earlier suit. This is the second time that defendants have had to face this exact suit. Accordingly, the Court finds that Wyman has delayed his claim to the point where it is barred by the doctrine of laches, and this claim must be dismissed.

His claim for unpaid wages must be dismissed as well. Again, a Court may look to an analogous state statute to inform its analysis of laches. The analogous Louisiana statutes for the recovery of unpaid wages have prescription periods of three years. *See* LA. CIV. CODE art. 3494; *see also* LA. REV. STAT. §§ 23:631-32; *Hudson v. Jackson Parish Sch. Bd.*, 811 So. 2d 212, 214-15 (La. Ct. App. 2002) (noting that suits under LA. REV. STAT. § 23:631 have the same prescription period as designated in LA. CIV. CODE art. 3494). As explained previously, this period has expired, and Wyman has not provided an excuse for the delay or an argument why his delay has not prejudiced defendants. In addition, courts have found a legitimate defense of laches to claims for unpaid wages with unexplained delays as short as two years, *see Chretien*, 701 F. Supp. at 271-72, or even eight months, *see The New Jersey*, 31 F.2d 116 (5th Cir. 1929) (affirming 31 F.2d 115 (E.D. Tex. 1928)); *see also* 1 THOMAS J. SCHOENBAUM AND JESSICA L. MCCLELLAN, ADMIRALTY AND MARITIME LAW § 17-31 (2003 & Supp. 2010). This claim, too, is barred by laches.

**IV. Conclusion**

For the foregoing reasons, defendant's motion to dismiss is GRANTED.

New Orleans, Louisiana, this 4th day of December, 2009

*Sarah Vance*

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE